## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JESSE CAMPBELL, Individually and
on Behalf of All Others Similarly
Situated,

           Plaintiffs,

vs.

TRANSGENOMIC, INC., et al.,

           Defendants.

4:17-CV-3021

MEMORANDUM AND ORDER

This dispute involves the merger of two companies: Transgenomic, Inc. and Precipio, Inc. The plaintiff, Jesse Campbell, is a former Transgenomic stockholder. Campbell is now suing Transgenomic, its former Chief Executive Officer Paul Kinnon, and Transgenomic's post-merger entity Precipio, Inc., under the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78a *et seq*., for allegedly issuing a false and misleading proxy statement in connection with the merger.

This matter is before the Court on Transgenomic and Paul Kinnon's (collectively, "Transgenomic") motion to dismiss (filing 34, filing 37). For the reasons set forth below, the Court will grant the parties' motions and Campbell's amended complaint will be dismissed.

## BACKGROUND

Transgenomic was a Nebraska-based biotechnical company specializing in advancing various technologies aimed at detecting and treating inherited diseases. Filing 22-1 at 24. Specifically, Transgenomic developed a "Multiplex ICE-COLD PCR technology" capable of detecting genetic mutations without

resorting to invasive medical procedures. Filing 22-1 at 25. Precipio was a cancer diagnostics company focused on providing diagnostic services to the oncology market. Filing 22-1 at 25. In essence, oncologists and hospitals around the country would use Precipio's services to more accurately and efficiently diagnose various forms of cancer. Filing 22-1 at 25.

On October 12, 2016, Transgenomic entered into a Merger Agreement with Precipio. Filing 35 at 10; *see also* filing 22-1 at 22. Under the terms of the agreement, Transgenomic would merge with Precipio to form Precipio, Inc. (*i.e.,* post-merger Precipio). Filing 22-1 at 22. The agreement also provided that Transgenomic stockholders would have the opportunity to exchange their shares of Transgenomic common stock for shares of post-merger Precipio common stock at a rate of 25.7505. Filing 65 at 10. In other words, Transgenomic stockholders could trade 25.7505 shares of their Transgenomic stock for one share of post-merger Precipio stock.

To evaluate the fairness of the proposed transaction, including the exchange ratio, Transgenomic retained Craig-Hallum Capital Group LLC—an investment banking firm specializing in mergers, acquisitions, and corporate valuations. Filing 35 at 10; filing 36-2 at 75. According to Craig-Hallum, the Merger Agreement and the exchange ratio were both fair and equitable to Transgenomic's investors. *See* filing 22-1 at 24. So, with this understanding in mind, Transgenomic moved forward with its merger negotiations.

On February 2, 2017, Transgenomic and Precipio amended the Merger Agreement to provide for a common stock exchange rate of 24.4255. Filing 22 at 5. That is, Transgenomic stockholders could now trade 24.4255 shares of their Transgenomic stock for one share of post-merger Precipio stock—a more favorable exchange rate to Transgenomic stockholders than that of the

original Merger Agreement. *See* filing 36-2 at 91. Following this amendment, Transgenomic's board of directors unanimously approved this version of the Merger Agreement and shortly after, Transgenomic filed its Preliminary Proxy Statement with the Securities Exchange Commission (SEC). *See* filing 36-2 at 56. On May 12, Transgenomic filed its Definitive Proxy Statement ("the Proxy Statement") with the SEC. Filing 22 at 10.

The Proxy Statement provided notice of a June 4, 2017 special shareholders meeting where Transgenomic stockholders would vote on a variety of issues associated with the merger. To assist the shareholders in their voting decision, the Proxy Statement included, among other things, various financial valuations and projections relating to Transgenomic, Precipio, and post-merger Precipio. *See* filing 22-1 at 58-79. In particular, the Proxy Statement included stand-alone revenue projections, a combined discounted cash flow projection, and other financial valuations. *See* filing 22-1 at 58-79.

And it is that financial information that is at the center of the parties' dispute. In his amended complaint, Campbell claims that the Proxy Statement was materially misleading. Filing 22. In particular, Campbell takes issue with one specific financial valuation—"Precipio's internal financial projection." This projection, he claims, was materially misleading in violation of Section 14(a) and Section 20(a) of the Exchange Act. Filing 22 at 18-25; filing 22 at 2-3; filing 22 at 20.

Transgenomic has moved to dismiss Campbell's amended complaint. And for the reasons discussed below, that motion will be granted.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

Further, complaints charging false or misleading statements under the federal securities laws are subject to heightened pleading requirements under the Private Securities Litigation Reform Act (PSLRA). 15 U.S.C. § 78u–4(b)(1). Such a complaint shall specify (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and, if an allegation is made on information and belief, (3) all facts supporting the belief, stated with particularity. *See* 15 U.S.C. § 78u–4(b)(1).

## DISCUSSION

As noted above, Transgenomic has moved to dismiss Campbell's claims under the Exchange Act. Those claims are premised on two separate, but related, provisions of the Act: Section 14(a) and Section 20(a). Filing 22 at 18-23. Campbell's Section 20(a) claim, however, necessarily depends on the existence of the Section 14(a) violation, *see* 15 U.S.C. § 78t. As such, the Court will begin its analysis with Section 14(a) of the Exchange Act before addressing Campbell's claim under Section 20(a).

## I. Section 14(a) of the Exchange Act and SEC Rule 14a–9[1]

Generally speaking, Section 14(a) of the Exchange Act prohibits the solicitation of proxies in violation of the rules and regulations prescribed by the SEC. 15 U.S.C. § 78n(a)(1). Under SEC Rule 14a–9, proxy solicitations may not contain statements that are "false and misleading with respect to any material fact" or omit "any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9(a). So, to successfully plead a claim arising under Section 14(a) and Rule 14a–9, Campbell must adequately allege that (1) the proxy contains a false or misleading statement or omission (2) concerning a material fact (3) that the defendant made with the requisite state of mind and (4) that caused the plaintiffs' loss. *See Ridler v. Hutchinson Tech. Inc.*, 216 F. Supp. 3d 982, 987 (D. Minn. 2016).

The parties dispute turns, in large part, on the second element of Campbell's Section 14(a) and Rule 14a-9 claim—materiality. A material fact is one that a reasonable shareholder would consider important in deciding how to vote. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). The issue of materiality is appropriately resolved as a matter of law where "reasonable minds cannot differ"—that is, where the alleged misstatements and omissions, even if true, would not have actual significance on the deliberations of the reasonable shareholder. *TSC Indus.*, 426 at 450; *see also K–Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002). And when evaluating materiality as a matter of law, the Court must

---

[1] In the amended complaint, Campbell also contended that Transgenomic's actions violated SEC Rule G. *See* filing 22 at 18-20. But, Campbell has abandoned that claim, *see* filing 39 at 27 n. 15, and as such, it is not addressed in this Memorandum and Order.

consider whether, under all the relevant circumstances, the fact would have "altered the total mix of information made available" to the shareholders. *Id.* (internal quotations omitted).

In his amended complaint, Campbell identifies two discrepancies that, he claims, were material to shareholders. Both of those issues, however, relate to the same financial projection—"Precipio's internal financial projection." The internal financial projection revealed the following:

Precipio's internal financial projections included the following:

Revenue distribution

| | 2016E | 2017E | 2018E | 2019E | 2020E |
|---|---|---|---|---|---|
| Services | $ 2.62 | $ 5.51 | $ 11.38 | $ 29.32 | $ 63.74 |
| Technology | $ — | $ 4.78 | $ 5.71 | $ 6.86 | $ 8.24 |
| Total | 2.62 | 10.29 | 17.09 | 36.18 | 71.98 |
| Services | 100% | 54% | 67% | 81% | 89% |
| Technology | 0% | 46% | 33% | 19% | 11% |

Filing 39 at 29.

Generally speaking, Campbell claims that the projection made Precipio look more valuable than it actually was for at least two reasons. First, Campbell contends that the projection is mislabeled. *See* filing 39 at 9-11. That is, the summary is labeled "Precipio's internal financial projections," but the analysis actually includes the financial projections of Precipio and Transgenomic following the merger—*i.e.,* post-merger Precipio. And second, Campbell argues that the underlying revenue distributions represented by the table fail to consider three key financial evaluations: (1) net income (loss), (2) operating income, and (3) operating expenses. *See* filing 39 at 30.

Campbell's latter contention is easily disposed of, so the Court will begin there. Basically, Campbell claims the omitted projections rendered the disclosed revenue distribution materially misleading. That is, according to

Campbell, the Proxy Statement "cherry picked" favorable projections, such as revenues and gross profit, but excluded unfavorable line items, such as net income and operating expenses. *See* filing 39 at 9. So, Campbell argues, Transgenomic's failure to include this information materially mislead its shareholders.[2] *See* filing 39 at 9.

To support that argument, Campbell cites to several cases standing for the proposition that when a proxy statement discloses valuation information, it must do so completely and accurately. *See Azar v. Blount Int'l, Inc.*, 2017 WL 1055966, at *6 (D. Or. Mar. 20, 2017); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013); *Schulein v. Petroleum Dev. Corp.*, 2012 WL 12884851, at *4 (C.D. Cal. June 25, 2012). And while that is true, Campbell mistakenly assumes that proposition is so broad as to require the proxy statement to include *every* possible financial disclosure that *may* be relevant to the valuation of a business. But that is not what the law demands. Instead, the crux of the analysis is this: where the proxy statement chooses to disclose a financial valuation, does it do so honestly? *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 830–31 (8th Cir. 2003); *Rand–Heard of N.Y., Inc. v. Dolan*, 2015 WL 1396984, at *6 (D. Minn. Mar. 25, 2015) *rev'd on other grounds*, 812 F.3d 1172 (8th Cir. 2016); *see also In re K–Tel.*, 300 F.3d at 898 (8th Cir. 2002).

And Campbell's amended complaint is completely devoid of any, much less sufficient, allegations to support an inference that the revenue distribution is factually inaccurate. Indeed, despite Campbell's contention that the Proxy Statement's failure to include "Net Income (Loss),

---

[2] The Court notes, however, that these calculations are disclosed in the annexed material of the Proxy Statement. *See* filing 22-1 at 163. In other words, it appears that the shareholders *did* have access to the allegedly withheld valuations.

EBIT/Operating Income, and Total Operating Expenses" conflated the projected revenue of Precipio, Campbell fails to describe precisely why that is so. *See* filing 22 at 4. Stated another way, at no point in Campbell's amended complaint does he allege that including "Net Income (Loss), EBIT/Operating Income, and Total Operating Expenses" would change the calculation of a *revenue* distribution.[3] Filing 22 at 4-5.

And that deficiency is not insignificant. Courts have routinely rejected the "tell me more" shareholder pleading. *See Trahan v. Interactive Intelligence Grp., Inc.*, 2018 WL 1522657, at *8 (S.D. Ind. Mar. 28, 2018); *Orlando v. CFS Bancorp*, Inc., 2013 WL 5797624, at *4 (N.D. Ind. Oct. 28, 2013). Instead, plaintiffs are required to plead facts which articulate *how* the omitted information impacted a specific disclosure or calculation that was *actually* made. 15 U.S.C. § 78u-4(b)(1); *Ridler*, 216 F. Supp. 3d at 988; *Beck ex rel. Equity Office Properties Tr. v. Dobrowski*, 2007 WL 3407132, at *6 (N.D. Ill. Nov. 14, 2007), *aff'd sub nom. Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009).

In other words, to successfully state a claim for relief, there must be allegations that, if true, would call into question the accuracy of the information disclosed. *Compare Ridler*, 216 F. Supp. 3d at 988 (dismissing the plaintiff's Section 14(a) claim where there were not allegations that the financial advisor's opinion was objectively false); *Lusk v. Life Time Fitness,*

---

[3] For example, the calculation of net income involves subtracting expenses from revenues. *See* filing 42 at 20. And cash flow is, in essence, operating income, minus taxes, plus depreciation and amortization. *See* filing 42 at 20. But Campbell has not pled how net income, operating expenses, and total operating expenses would alter a *revenue* calculation. The Court is not convinced that they would, but even so, Campbell has failed to demonstrate such a connection in his amended complaint. *See* 15 U.S.C. § 78u–4(b)(1).

Inc., 213 F. Supp. 3d 1119, 1132 (D. Minn. 2016); *Goldfinger v. Journal Commc'ns Inc.*, 2015 WL 2189752, at *5 (E.D. Wis. May 8, 2015) (dismissing Section 14(a) claim where the proxy statement provided "extensive financial disclosures"); *with City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Estate Tr., Inc.*, 635 F. Supp. 2d 783, 794 (N.D. Ill. 2009) (denying the defendant's motion when the plaintiff alleged that the fairness opinion "relied on faulty information"); *Trump Hotels S'holder Derivative Litig.*, 2000 WL 1371317, at *14 (S.D.N.Y. Sept. 21, 2000) (denying the defendant's motion when the plaintiff alleges that the fairness opinion relied on an expansion that never occurred). But here, Campbell has failed to "connect[] the dots" between the desired information (*i.e.,* net income, EBIT/operating income, and total operating expenses) and the valuations *actually* disclosed in the Proxy Statement (*i.e.,* revenue distributions). *Lusk*, 213 F. Supp. 3d at 1132. Accordingly, Transgenomic's motion will be granted on those grounds.

That leaves Campbell's remaining argument: the label "Precipio's internal revenue projections" found above the financial disclosure was materially misleading. In support of that contention, Campbell argues that if a shareholder were to turn to the provision of the Proxy Statement containing "Precipio's internal financial projections" he or she would—mistakenly—assume that the projection was a financial projection of Precipio *before* the merger. Filing 39 at 24. Instead, that projection is a projection of post-merger Precipio's revenue distribution. Filing 39 at 24. And that oversight, claims Campbell, renders the valuation materially misleading. Filing 39 at 24.

But in advancing that argument, Campbell ignores the other 200-plus pages of the Proxy Statement and annexed materials. That is, Campbell's argument assumes that the shareholder has tunnel vision. The legal standard, however, requires a reasonable shareholder to see the entire

landscape. Indeed, the question is not whether the particular statement was misleading, but rather, whether all the representations, taken together and in context, would have misled a reasonable investor. *See Ridler*, 216 F. Supp. 3d at 988; *Furlong Fund LLC v. VBI Vaccines, Inc.*, 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016).

And according to Transgenomic, in the context of the entire Proxy Statement, a reasonable investor would not, and could not, have been materially misled. Filing 35 at 16-18. That is true, Transgenomic argues, for at least two reasons. First, any reasonable shareholder would have realized that the line item "Services" referred to revenue derived from Precipio's line of business, and the word "Technology" described revenue ascertained from Transgenomic's' line of business. Filing 35 at 16-18. And second, when comparing the numbers included in the internal revenue projection valuation to other provisions of the Proxy Statement, it is clear that the projection involved post-merger Precipio rather than Precipio. *See* filing 35 at 16.

In support of its former contention, Transgenomic suggests that a basic understanding of the two entities involved in the proposed transaction would have revealed the Services/Technology distinction. Filing 22-1 at 25-26. Specifically, the Proxy Statement states that Transgenomic is a "biotechnology company" that developed "MX-ICP technology" having the ability to detect genetic mutations, filing 22-1 at 24, and Precipio is a "diagnostic company providing diagnostic services to the oncology market." Filing 22-1 at 25. In other words, the Proxy Statement generally describes Transgenomic as a "Technology" driven entity, while Precipio is a "Service" focused business. *See generally* filing 22-1 at 25-26.

And other portions of the Proxy Statement also clarified the Services/Technology distinction. Filing 35 at 16. For example, less than ten

pages before the allegedly misleading financial projection, the "Discounted Cash Flow Analysis of the Combined Company" used "Services" and "Technology" to differentiate between "Precipio" and "Transgenomic" for purposes of the combined discounted cash flow analysis. In particular, the combined discounted cash flow analysis states:

| | | 2017E | | 2018E | | 2019E | | 2020E |
|---|---|---|---|---|---|---|---|---|
| **Pro-Forma Financials (millions)** | | | | | | | | |
| Services Revenue | $ | 5.5 | $ | 11.4 | $ | 29.3 | $ | 63.7 |
| COGS | $ | 1.4 | $ | 3.1 | $ | 7.1 | $ | 14.4 |
| Gross Profit | $ | 4.1 | $ | 8.3 | $ | 22.3 | $ | 49.3 |
| Technology Revenue | $ | 4.8 | $ | 5.7 | $ | 6.9 | $ | 8.2 |
| COGS | $ | 2.6 | $ | 3.1 | $ | 3.6 | $ | 4.3 |
| Gross Profit | $ | 2.2 | $ | 2.6 | $ | 3.2 | $ | 3.9 |
| Consolidated Results | | | | | | | | |
| Revenue | $ | 10.3 | $ | 17.1 | $ | 36.2 | $ | 72.0 |
| COGS | $ | 4.0 | $ | 6.2 | $ | 10.7 | $ | 18.8 |
| Gross Profit | $ | 6.3 | $ | 10.9 | $ | 25.5 | $ | 53.2 |
| SG&A | $ | 6.4 | $ | 8.2 | $ | 12.3 | $ | 18.2 |
| EBITDA | $ | 0.3 | $ | 3.0 | $ | 13.3 | $ | 35.1 |

Filing 22-1 at 67. So, in other words, the table illustrates that following the merger, the revenue of the combined entity would come from two sources: Services Revenue and Technology Revenue. And based on this representation, Transgenomic argues it is not difficult to comprehend that when the Proxy Statement bifurcates "Services" revenue from "Technology" revenue, it does so to illustrate the distribution of revenue *following* the merger. Filing 35 at 16-18.

Transgenomic bolsters that contention with its second argument: that even if the shareholder did not understand that the term "Services" referred to Precipio and "Technology" referenced Transgenomic, at the very least, a reasonable investor would have realized that "Precipio's internal financial projection" was a combined, post-merger, financial valuation. And that is true, Transgenomic argues, because if a shareholder were to set the revenue allocations found in the discounted cash flow analysis directly next to the

12

revenue allocations utilized by in Precipio's internal financial projection, it would be apparent that the numbers are, in essence, the same.[4] *See* filing 35 at 16-18.

For instance, the 2017 "Services Revenue" line item included in the combined cash flow analysis was $5.5 million. Filing 22-1 at 67. And in 2017, the "Services" revenue distribution on the internal financial projection was $5.51 million. Filing 22-1 at 75. For the same year, the "Technology Revenue" included in the combined cash flow analysis was $4.8 million. Filing 22-1 at 67. And the "Technology" revenue distribution found in the internal financial projection was $4.78 million. Filing 22-1 at 75. Finally, the "Consolidated Revenue" included in the combined cash flow analysis was $10.3 million. Filing 22-1 at 67. And the "Total" revenue distribution in the internal financial projection was $10.29 million for 2017. Filing 22-1 at 75.

So, for all intents and purposes, the revenue calculations made in the combined cash flow analysis, and the allegedly misleading internal financial projection, are the same. And given the obvious similarities between the two summaries, according to Transgenomic, a reasonable shareholder would understand that the "Precipio internal financial projection" was a combined, post-merger, projection. Filing 35 at 16-18. And thus, the projection is not, as a matter of law, materially misleading. *See* TSC Indus., Inc., 426 at 450.

---

[4] The Court acknowledges Campbell's contention that because the numbers are rounded, no reasonable shareholder would have "pieced together" that this was a combined projection. Filing 39 at 24. But the Court finds it difficult to imagine a scenario where a reasonable shareholder would not understand basic rounding. After all, the Proxy Statement is "not required to address [reasonable investors] as if they were children in kindergarten". *ProShares Trust Sec. Lit.*, 728 F.3d 96 (2d Cir. 2013) (internal quotations omitted).

The Court agrees. And although the Court understands that the projection *could* have more clearly demonstrated that "Precipio's internal financial projection" was a "post-merger Precipio internal financial projection," the Court is not persuaded that that oversight was materially misleading. After all, when viewed in connection with the nearly 140 remaining pages of the Proxy Statement, 130 pages of annexed material, the plethora of background information concerning the nature of the entities, the numerous financial disclosures, the various financial projections, and the inclusion of Craig-Hallum's entire financial fairness opinion, any mislabeling did not "significantly alter the total mix of information made available." *See TSC Indus., Inc., 426 U.S. at 449.* Accordingly, Court will grant Transgenomic's motion to dismiss in its entirety.

## II. SECTION 20(A)

Transgenomic has also moved to dismiss Campbell's Section 20(a) claim. Campbell's claim, in essence, alleges that Kinnon, the CEO of Transgenomic, is also liable under the Exchange Act. In particular, Section 20(a) provides liability for "every person who, directly or indirectly, controls any person" who violates the Exchange Act. 15 U.S.C. § 78t(a). But Campbell's Section 20(a) claim assumed there has actually been a violation of the Exchange Act. And because Campbell did not adequately plead his Section 14(a) violation, the Section 20(a) claim shall also be dismissed.

## CONCLUSION

In sum, Transgenomic's motion to dismiss will be granted, and Campbell's amended complaint will be dismissed. As a final matter, in his brief, Campbell asked for leave to replead his claims. Filing 39 at 43. Campbell has, however, failed to move for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15 and NECivR 15.1. As such, the Court has no

proposed amended complaint to evaluate—so, his request for leave to file an amended complaint is denied. *See United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742 (8th Cir. 2014)* (district court is not obliged to invite motion for leave to amend if plaintiff did not file one); *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 958 (8th Cir. 2012)* (leave to amend may be denied when plaintiff has not submitted proposed amended pleading in accord with local rule); *U.S. ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009)* (futility is valid basis for denying leave to amend); *see also Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015); Sorace v. United States, 788 F.3d 758, 768 (8th Cir. 2015); Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 665 (8th Cir. 2012); O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009); Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985).*

IT IS ORDERED:

1. Transgenomic's motion to dismiss (filing 34) is granted.

2. Campbell's complaint is dismissed.

3. A separate judgment will be entered.

Dated this 3rd day of May, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge

15