IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE CAMPBELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSGENOMIC, INC., et al.,<br><br>Defendants. | 4:17-CV-3021<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Lead Plaintiff's Motion for Final Approval of the Settlement, Plan of Allocation, and Fees and Expenses (filing 70). Having received the statements of counsel at a fairness hearing, and reviewed and considered the entire record, the Court will grant the motion.

BACKGROUND

This action was filed on February 17, 2017 and, after a number of preliminary filings, the defendants moved to dismiss the plaintiffs' operative complaint. Filing 1; filing 34; filing 37. The plaintiffs charged the defendants with allegedly issuing a false and misleading proxy statement in connection with a corporate merger, in violation of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq*. *See* filing 20. But the Court dismissed the complaint for failure to state a claim, finding as a matter of law that the proxy statement was not materially misleading. *See* filing 45.

The plaintiffs appealed, *see* filing 47, and the U.S. Court of Appeals for the Eighth Circuit reversed, finding that whether the proxy statement was misleading was a question of fact for the trier of fact. *See Campbell v.*

*Transgenomic, Inc.*, 916 F.3d 1121 (8th Cir. 2019). Shortly after remand, the parties advised the Court that they had reached a settlement. Filing 58. The settlement was executed by stipulation on June 21, 2019. Filing 60.

The plaintiffs filed an unopposed motion, pursuant to Fed. R. Civ. P. 23(b) and (e), to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. Filing 61. The Court granted that motion, finding, among other things, that this action could be maintained as a class action; the prerequisites to class certification under Rule 23(a) had been satisfied; and certification of the settlement class was superior to other available methods for the fair and efficient resolution of this controversy, satisfying Rule 23(b)(3). Filing 66. The Court designated a class representative, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing. Filing 66. And the Court reviewed the forms of notice submitted by the parties, approved them as to form, and approved their plan for directing notice to the class members, finding it provided the best notice practicable under the circumstances and was in compliance with Rule 23 and the requirements of due process. Filing 66.

Notice was mailed to identified class members, setting a deadline for the class members to request exclusion from the class or object to the settlement. Filing 74-1. Notices were also sent as required by 28 U.S.C. § 1715. Filing 67. Neither the claims administrator nor the Court received any objection that the proposed settlement was unfair to the settlement class. *See* filing 74-1.[1]

---

[1] One "objection" was received essentially taking the defendants' side, suggesting that the plaintiffs' claims lack merit and that the defendants should have to pay nothing. Filing 73-1. But the Court's role under Fed. R. Civ. P. 23(e) is to safeguard the interests of class members, not the settling defendants. Nor does the objector have standing to complain about an injury he has not actually suffered. *See Huyer v. Van de Voorde*, 847 F.3d 983, 987 (8th Cir. 2017).

Accordingly, the plaintiffs filed the present motion to approve the class settlement, along with a brief and index of evidence in support. Filing 70, filing 71; filing 72. A fairness hearing was held, at which no objecting class members or other objectors appeared. Filing 76.

SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule 23(e). The Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (9th Cir. 2005); *In re BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2004); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The Court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017); *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015); *see Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018). If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate. Rule 23(e)(2). But a class action settlement is a private contract negotiated between the parties. *Marshall,* 787 F.3d at 509; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. And a settlement agreement is presumptively valid. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

In this case, the Court finds that the appointed class representative and his counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representative and the settling defendants were represented by able and

experienced counsel. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representative, settling defendants, and their respective counsel.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members was adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B). By virtue of the fact that an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. The notice given must be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. In addition, the notice must reasonable to convey the required information and it must afford a reasonable time for those interested to make their appearance. *Id.* The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Id.* at 122.

The notice given in this case met those requirements; it informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement (including attorney fees and expenses), and afforded the class members a reasonable opportunity to object.[2] As established in the Court's preliminary order approving notice, notices were sent directly to class members using the best available contact information. In short, the notice satisfied the requirements of Rule 23 and due process.

---

[2] The Court notes, in particular, the opportunity to object to the award of attorney's fees in the amount of ⅓ of the settlement fund. Filing 60-1 at 8; *see Keil*, 862 F.3d at 703-05.

The Court also finds that the settlement agreement is fair, reasonable, adequate, and in the best interests of class members. In determining whether a settlement agreement is fair, the Court should consider (1) the merits of the plaintiffs' case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Keil*, 862 F.3d at 693; *Marshall*, 787 F.3d at 508; *Uponor*, 716 F.3d at 1063.; *see Pollard*, 896 F.3d at 907. The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *Rawa v. Monsanto Co.*, 934 F.3d 862, 868 (8th Cir. 2019); *see Pollard*, 896 F.3d at 907; *Target*, 892 F.3d at 978; *Keil*, 862 F.3d at 695; *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012). If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995).

That said, the Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin*, 513 F.2d at 123. In examining a proposed settlement for approval or disapproval, the Court does not try the case; the very purpose of a compromise is to avoid the delay and expense of a trial. *Id*. at 124; *see also DeBoer*, 64 F.3d at 1178. So, the Court need not make a detailed investigation consonant with trying the case; it must, however, provide an appellate court with a basis for determining that its decision rests on well-reasoned conclusions, and is not mere boilerplate. *Keil*, 862 F.3d at 693; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932-33. The views of the parties

to the settlement must also be considered; if only a handful of members object to the settlement, that weighs in its favor. *DeBoer*, 64 F.3d at 1178.

But of course, the Court already *has* made a detailed examination of the issues of fact and law which underlie the merits of this dispute, and the Court found no merit to the plaintiffs' claims. *See* filing 45. The Eighth Circuit reversed that decision—but that still left the plaintiffs in the unenviable position of arguing against summary judgment and then trying a case in front of a judge whose skepticism of their claims was on the record. In particular, whether the plaintiffs could have proven causation and damages—a question left open by the Court of Appeals, filing 50 at 9 n.1—was likely to be a difficult issue. And doing so was likely to be complex and expensive.

Instead, the settlement agreement provides for the creation of a common fund of nearly $2 million. Filing 60 at 13. That is, in the Court's view, a fair bargain, considering that the plaintiffs have (1) settled claims that the Court already found suspect, (2) avoided potentially lengthy and complex litigation, and (3) done so without objection from the settlement class. The Court is not persuaded that many (if any) members of the settlement class would have done substantially better as individual plaintiffs.

Based on the foregoing, the Court finds that the settlement agreement is fair, reasonable, and adequate within the meaning of Rule 23(e)(2), and will approve it. The Court will approve the settlement.

ATTORNEY FEES AND EXPENSES

In a certified class action, the Court may award reasonable attorney's fees and non-taxable costs that are authorized by the parties' agreement. Rule 23(h). Settlement class counsel has moved for an award of fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2). Filing 70. The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with

counsel to establish a factual basis to support the award. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

Courts utilize two main approaches to analyzing a request for attorney fees. *Johnston,* 83 F.3d at 244. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Id.* Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45. The percentage-of-the-benefit method is recommended in common-fund cases. *Id.* But the Court has the discretion to use either method. *Target,* 892 F.3d at 976-77; *see Rawa,* 934 F.3d at 870; *Keil,* 862 F.3d at 701; *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Johnston,* 83 F.3d at 245.

Under *either* the lodestar or percentage-of-the-benefit method, the Court may determine the reasonableness of the fee award by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 719-20 (5th Cir. 1974). *Target,* 892 F.3d at 977; *Keil,* 862 F.3d at 701. Those factors are:

    1.    The time and labor required,
    2.    The novelty and difficulty of the questions,
    3.    The skill requisite to perform the legal service properly,
    4.    The preclusion of other employment by the attorney due to acceptance of the case,
    5.    The customary fee,
    6.    Whether the fee is fixed or contingent,
    7.    Time limitations imposed by the client or the circumstances,

8.     The amount involved and the results obtained,

9.     The experience, reputation, and ability of the attorneys,

10.     The "undesirability" of the case,

11.     The nature and length of the professional relationship with the client, and

12.     Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

The "percentage of the benefit" here is $\frac{1}{3}$ of the settlement fund.[3] That's well in line with other attorney's fee awards in this circuit. *See Rawa*, 934 F.3d at 870; *Target*, 892 F.3d at 977; *Keil*, 862 F.3d at 701; *Caliguri*, 855 F.3d at 865-66; *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *In re Life Time Fitness*, 847 F.3d at 623. The award is further supported by a lodestar cross-check. The standards to be considered in calculating attorneys' fees under a "lodestar" approach include (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin*, 513 F.2d at 127. But the starting point is multiplying hours and typical hourly rates; only after such a calculation do other, less objective factors come into the equation. *Grunin*, 513 F.2d at 127.

The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation."

---

[3] The Court is aware that administrative costs are to be paid from the settlement fund. The Court has considered those costs, and they are justifiable. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017).

*Jorstad*, 643 F.2d at 1313.[4] Generally, attorneys have substantiated their fee claims by providing detailed records relating to standard hourly rates for themselves or their firm and a complete breakdown of who spent what time in what endeavors. *Id.*; *see Grunin*, 513 F.2d at 127. Here, those records result in a lodestar multiplier of 1.47, which is highly reasonable in light of the quality of the work and the results obtained, and the contingency basis on which representation was undertaken. *See Rawa*, 934 F.3d at 870; *Keil,* 862 F.3d at 701; *Caligiuri*, 855 F.3d at 866; *Huyer*, 849 F.3d at 399-400.

The Court is aware that the separate negotiation of attorney fees may present an opportunity for abuse. *See Johnston*, 83 F.3d at 246 n.11. But the Court finds no basis to suspect abuse or collusion here. The Court also notes that the potential award of fees and expenses was disclosed in the notices to class members, including the amount, and no objections to the amount of the fees and costs were received. *See In re U.S. Bancorp.*, 291 F.3d at 1038. Given the time and skill necessary to litigate this case, including an appeal, and the result obtained in a contingency-fee case, the Court finds that the requested attorney's fees and non-taxable costs are reasonable, and will grant them.

## SERVICE AWARD

Finally, the class representative seeks a service award of $1,000. Filing 71 at 34. It is within the Court's discretion to award service awards to a

---

[4] The Court notes that the evidence did not directly speak to whether counsels' hourly rates were typical. Their presentation would certainly have been more helpful had that been included. Nonetheless, the Court's own experience and its research indicate that the rates at issue are at least defensibly representative for the relevant communities. *See Miller v. Dugan,* 764 F.3d 826, 831 (8th Cir. 2014) (prevailing rate in market from which attorneys have traveled may be considered); *Ravina v. Columbia Univ.*, No. 16-CV-2137, 2020 WL 1080780, at *4-7 (S.D.N.Y. Mar. 6, 2020) (discussing hourly rates in New York City).

plaintiff who served as a class representative, considering the actions he took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort he expended in pursuing the litigation. *Caligiuri*, 855 F.3d at 867. There has been no objection to the service award proposed here,[5] and the Court finds that it is fair, reasonable, and properly based in the benefit to the class members generated by the litigation. The Court will approve the award.

IT IS ORDERED:

1. The Lead Plaintiff's Motion for Final Approval of the Settlement, Plan of Allocation, and Fees and Expenses (filing 70) is granted.

2. The settlement agreement is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.

3. The formula for the calculation of the claims of the authorized claimants, which is set forth in the notice sent to class members, provides a fair and reasonable basis upon

---

[5] Although the notice to class members mentioned the possibility of such an award, it did not include the amount. *See* filing 60-1 at 8. In retrospect, it would have been better to include that. *Cf. Keil*, 862 F.3d at 703-05. Nonetheless, the award is typical and even nominal as such awards go, *see Caligiuri*, 855 F.3d at 867-68, and the Court has no reason to believe including the amount in the notice would have made any difference.

   which to allocate the proceeds of the settlement fund, and that plan of allocation is approved.

4. Pursuant to Rule 23, the Court finally certifies Jesse Campbell as the class representative and Monteverde & Associates PC as settlement class counsel.

5. Jesse Campbell is awarded $1,000 for his service as class representative.

6. This case is dismissed.

7. A separate judgment will be entered.

Dated this 3rd day of June, 2020.

          BY THE COURT:

          *John M. Gerrard* (signature)
          John M. Gerrard
          Chief United States District Judge